UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-156 (SRN/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **GOVERNMENT'S** |
| Plaintiff, | ) | **RESPONSE TO** |
| | ) | **DEFENDANT** |
| v. | ) | **BURRELL'S MOTION** |
| | ) | **TO PRECLUDE** |
| MICHAEL ALLEN BURRELL (4) | ) | **REFERENCE TO** |
| a.k.a. Skitz | ) | **ANOTHER'S TRIAL** |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States of America, through undersigned counsel, respectfully responds to the Defendant Michael Allen Burrell's Motion to Preclude Reference to Another's Trial (ECF No. 265) and Defendant Burrell's arguments in his supporting memorandum (ECF No. 280) as follows.

## I.    Summary of Proposed Trial Testimony Relevant to Motion

At trial, a Cooperating Defendant will testify that one of the most important rules of the charged Enterprise—or the Minneapolis Bloods—is to not speak with law enforcement. Members of the Minneapolis Bloods learn early on in their entry to the gang that a person can be "violated" (meaning, beaten) or shot at if they cooperate with law enforcement investigations. A Cooperating Defendant will also testify that members of the Minneapolis Bloods are expected to fight members of rival gangs—and that among the Minneapolis Bloods' rivals is the Family Mob gang. Members of the

1

Minneapolis Bloods are also expected to help other Bloods who are disrespected by rival gang members by helping those other Bloods fight or shoot at rivals.

Multiple witnesses are anticipated to testify that one government witness, Isaac Hodge, is a serial cooperator who also has ties to the Family Mob. Mr. Hodge is referenced in the Indictment as "Victim 1"; Defendant Burrell's assault of whom kicked off the fight that resulted in the death of Mr. Hodge's associate, "Victim 2." *See* ECF No. 1, at 7–8; *see also* ECF No. 256, at pp. 24–30.

Mr. Hodge is both a rival gang member and a previous witness. Among other things, but salient to the pending Motion, Mr. Hodge is anticipated to testify in this trial that:

a)    He previously testified against Defendant Burrell's younger brother in two criminal trials (the latter of which took place in 2008),[1] and both trials were in connection with the same murder (Mr. Hodge refers to this as the "Tyesha Edwards" case when asked about his prior experiences testifying).

b)    He knows Defendant Burrell as "Big Skitz" and his little brother as "Little Skitz." Both are Bloods.

c)    His participation in the trials against "Little Skitz" was well-known throughout the community.[2]

---

[1] Myon Burrell's first conviction was reversed because: (1) Myon Burrell's *Miranda* waiver was ineffective, (2) expert testimony vouching for a witness's credibility was error, and (3) the district court erred by refusing to compel discovery of the State's plea negotiations with Myon Burrell's codefendants. *State v. Burrell*, 697 N.W.2d 579, 597, 601, 605 (Minn. 2005). The second trial was a bench trial and took place in 2008. Mr. Hodge was a witness in both trials.

[2] Defendant Burrell's memorandum acknowledges the parties both agree Defendant

2

The government does not plan to elicit testimony regarding whether Defendant Burrell's brother was ultimately convicted of murder; nor does it intend to elicit testimony regarding the age of the victim in his brother's trial. The government also agrees not to offer any additional exhibits on this subject.

## II.    Argument

### *Rule 401*

The proposed testimony is most certainly relevant.

The United States' burden is to prove, among other things, the existence of the charged Enterprise (the Minneapolis Bloods) and that Defendant Burrell aided and abetted the murder of M.B. ("Victim 2") with the purpose of maintaining or increasing his position in that Enterprise. *See* 18 U.S.C. § 1959. The catalyst to the fight that turned fatal on June 14, 2020, was a confrontation of Mr. Hodge by Defendant Burrell and his fellow Bloods in the men's bathroom of the bar. The murder victim was at the bar with Mr. Hodge that night and is associated with a northside gang. Mr. Hodge's prior testimony sheds light on Defendant Burrell's knowledge of Mr. Hodge, knowledge of Mr. Hodge's affiliation with the Family Mob, knowledge that Mr. Hodge cooperates with law enforcement, and knowledge that Mr. Hodge "disrespected" (as the Bloods

---

Burrell knew about Mr. Hodge's prior testimony. If this fact alone was the subject of a stipulation, the United States need not elicit any testimony regarding this topic.

would say) a family member and fellow Bloods members in the one of the most serious and unforgiveable manners—by testifying against them in a criminal trial. Mr. Hodge's prior involvement in a prosecution against a Minneapolis Blood and family member of Defendant Burrell makes it more probable that Defendant Burrell intended to assault Mr. Hodge and aid and abet in the shooting and murder of Mr. Hodge's associate, M.B., that immediately followed. *See* Fed. R. Evid. 401.

### *Rule 403*

The United States agrees to limit the proposed testimony to the categories set forth above. Such limitations avoid any unfair prejudice, as any juror familiarity with Myon Burrell or Tyesha Edwards can be ferreted out during jury selection.

Even if the Court finds any unfair prejudice,[3] it is not so unfairly prejudicial to substantially outweigh the value of the proffered evidence. If the Court finds unfair prejudice here, the Court "would go on to evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well." *See Old Chief v. United States*, 519 U.S. 172, 182 (1997). "If an alternative were found to have

---

[3] "Unfair prejudice. . . means undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *See* Fed. R. Evid. 403 Comm. Notes.

substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered. . . with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." *Id.* at 182–83. Here, there is no alternative to the proposed testimony. Mr. Hodge's prior connection to Defendant Burrell's brother's murder trial cannot be contorted into something else and its consequence to this case is irreplaceable. As Defendant Burrell's memorandum suggests, there are no other recorded personal points of conflict between Mr. Hodge and Defendant Burrell. Therefore, the proposed testimony should be afforded a high value to the government's case, and any potential prejudice does not tip the scales to favor exclusion.

Assuming for the sake of argument that Mr. Hodge's connection to the Family Mob provides a suitable alternative to the proposed testimony (it does not), "the mere fact that two pieces of evidence might go to the same point would not, of course, necessarily mean that only one of them might come in." *See id.* at 183. The fact of Mr. Hodge's testimony in two trials that captured much attention in the community not only provides motive for why members of the Bloods assaulted him and murdered his associate in June 2020; it corroborates the testimony anticipated to come from Cooperating Defendants regarding the consequences of taking the witness stand in a criminal trial. Defendant Burrell's argument concerning the lapse of time between Myon

Burrell's trial and his assault of Mr. Hodge does not erase the relevance and value of this evidence—if anything, it impacts weight, and the allocation of such weight should be entrusted to the jury.

Finally, any concerns raised about the highly publicized proceedings against Myon Burrell can be addressed in *voir dire* or through a limiting instruction, or both. *See* Fed. R. Evid. 403 Comm. Notes ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction.").

## III.   Conclusion

For these reasons, the United States respectfully request the Court deny Defendant Burrell's Motion.

DATED:  August 21, 2024          ANDREW M. LUGER
                                 United States Attorney

                                 */s/ Esther Soria Mignanelli*
                                 BY:  Esther Soria Mignanelli
                                 Assistant United States Attorney

                                 BY:  Kristian Weir
                                 Assistant United States Attorney

                                 BY:  Campbell Warner
                                 Assistant United States Attorney

6