UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-160 (NEB)

UNITED STATES OF AMERICA,

Plaintiff,

v.

CARLOS SERRANO (39),
    a.k.a. Nogoodlos
    a.k.a. Los
                                 **PLEA AGREEMENT**

Defendant.

The United States of America and **CARLOS SERRANO** (hereinafter referred to as "the defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota and the Violent Crime and Racketeering Section of the United States Department of Justice. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

## I.   DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

1.   **Guilty Plea**. The defendant knowingly and voluntarily agrees to plead guilty to criminal Information charging the following offense:

> COUNT ONE: Conspiracy to Engage in a Racketeer Influenced
>
> Corrupt Organization, in violation of 18 U.S.C. §§ 1962(d) and 1963.

The Government agrees to move to dismiss the remaining count(s) contained in the Third Superseding Indictment against the defendant at sentencing. ECF No. 820.

SCANNED
MAY 2 1 2025
U.S. DISTRICT COURT MPLS

2.    **Waiver of Indictment.**  The defendant waives the right to be charged by Indictment.  The defendant agrees to execute in open court a separate Waiver of Indictment and consents to proceed by Information with respect to these charges.

3.    **Pretrial Motions**.  The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case.  As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions in this case.

4.    **Waiver of Trial Rights**. The defendant acknowledges that he has been advised and understands that by entering a plea of guilty he is waiving – that is, giving up – certain rights guaranteed to all defendants by the laws and the Constitution of the United States. Specifically, the defendant is giving up:

    a.  The right to proceed to trial by jury on all charges, or to a trial by a judge if the defendant and the United States both agree;

    b.  The right to confront the witnesses against the defendant at such a trial, and to cross-examine them;

    c.  The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

    d.  The right to testify in his own defense at such a trial if he so chooses;

    e.  The right to compel witnesses to appear at such a trial and testify on the defendant's behalf; and

2

      f.  The right to have the assistance of an attorney at all stages of such trial proceedings.

5.  **Additional Consequences**.  The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6.  **Additional Charges**. The United States agrees not to bring any additional charges against the defendant arising out of the defendant's participation in conduct described in the agreed-upon factual basis for this Plea Agreement, to the extent that the defendant has disclosed such participation to the United States Attorney's Office – District of Minnesota and the Organized Crime and Gang Section of the United States Department of Justice (hereinafter collectively referred to as "this Office") as of the date of this Agreement.

## II.  ELEMENTS OF THE OFFENSE

7.  COUNT ONE: The elements of Conspiracy to Engage in a Racketeer Influenced Corrupt Organization, in violation of 18 U.S.C. § 1962(d) are:

First, that there was an agreement among two or more persons to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity;

Second, that the defendant knowingly and willfully became a member of that agreement; and

Third, that the defendant agreed that a conspirator, which could be himself, would commit two racketeering acts.

## III.    FACTS SUPPORTING GUILTY PLEA

8.    The defendant will plead guilty because he is, in fact and under the law, guilty of the crimes charged.

9.    The defendant acknowledges that if he elected to go to trial instead of pleading guilty, the United States could prove his guilt beyond a reasonable doubt. The defendant further acknowledges that his admissions and declarations of fact set forth below satisfy every element of the charged offenses.

10.    The defendant waives any potential future claim that the facts he admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offense.

11.    The defendant understands, acknowledges, and agrees that the facts set forth below are only those necessary to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in Section VI below, and that they do not capture the entirety of his conduct, criminal or otherwise, in this case. The defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

12.    From in or about 2014, through in or November of 2023, in the District of Minnesota, known associates and codefendants of **SERRANO**, including others known and unknown, were members of, employed by, or associated with the Highs gang described below, an enterprise engaging in, and the activities of which affected interstate and foreign commerce, and unlawfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of the Highs gang

4

through a pattern of racketeering activity described below (although Serrano's involvement with these other individuals did not begin until April 2021):

    a.     Murder, in violation of Minnesota Code, Section 609.185, 609.19, 609.17, 609.05, and 609.175; and

    b.     Robbery, in violation of Minnesota Code, Sections 609.24, 609.245, 609.17, 609.05, and 609.175; and

    c.     Multiple offenses involving: Trafficking and distribution of controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

<u>Structure and Operation of the Enterprise</u>

13.    The structure and operation of the Highs includes, but is not limited to, the following:

14.    The Highs have been in existence in Minneapolis since approximately 2004. The Highs are primarily active in the northside of Minneapolis. The Highs are divided into subsets or "cliques."

15.    Within their territory, the Highs congregate at specific businesses from which they control the area drug trade and deal drugs, including fentanyl, oxycodone hydrochloride, and marijuana. These included, but were not limited to, the following: Merwin Liquors (700 West Broadway Avenue), Winner Gas (626 West Broadway Avenue), Walgreens (627 West Broadway Avenue), Boost Mobile (523 West Broadway Avenue), Autozone (501 West Broadway Avenue), Cub Foods (701 West Broadway Avenue), 4th Street Saloon (328 West Broadway Avenue), Wendy's

(421 West Broadway Avenue), Taco Bell (425 West Broadway Avenue), and other businesses, all of which are located at or near the West Broadway Avenue and Lyndale Avenue North intersection in Minneapolis.

<u>The Racketeering Enterprise</u>

16.    The Highs, including its leaders, members, and associates, constitute an "enterprise," as defined in Title 18, United States Code, Section 1961(4) (hereafter "the enterprise"), that is a group of individuals associated in fact. The enterprise constitutes an ongoing organization whose members and associates, including its prospects, function as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was and is engaged in, and its activities affected, interstate and foreign commerce.

17.    Beginning in or about 2021, and continuing through on or about the date of this Information, both dates being approximate and inclusive, within the District of Minnesota, and elsewhere, defendant **SERRANO** and his codefendants, being persons employed by and associated with the Highs, which was engaged in and the activities of which affected interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that Enterprise through a pattern of racketeering activity.

18.    From on or about April 9, 2021 to on or about May 12, 2022, **SERRANO** conspired with at least one co-defendant to transport or arrange for the transport of fentanyl pills from Arizona to the Minneapolis area for re-sale by the Highs.

6

19.     On or about December 26, 2021, a co-defendant sent a photograph of fentanyl pills on a digital scale to **SERRANO**.

20.     From on or about February 10, 2022 to on or about March 30, 2022, at least nine USPS parcels with significant weights were sent from a Phoenix Business to Shine Beauty.  A co-conspirator coordinated the shipment of fentanyl pills from Arizona to Shine Beauty.

21.     On or about April 12, 2022, **SERRANO** messaged  a co-conspirator "so we at $62,150.00." This was in reference to drug proceeds.

22.     On May 10, 2022, a co-defendant texted a Minnesota co-defendant "I aint booked ticket yet even if I gotta stay one more day I will, I just need to get as much as I can. I got to much in streets rn. Plus I'm waiting on word to see if Los [**SERRANO**] coming this way as well before I take off."

23.     On or about May 12, 2022, SERRANO messaged a co-defendant "he taking shit up north, so I'm tryna put a bunch aside for you." This was in reference to fentanyl pills.

24.     **SERRANO** agrees that he took part in the conspiracy by supplying fentanyl pills to Highs members and associates for re-sale in Minnesota.  He agrees that as part of the RICO conspiracy he is responsible for the distribution of at least 4 kilograms but less than 12 kilograms of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide).

## IV.    COLLATERAL USE OF FACTUAL ADMISSIONS

25.    The facts set forth in Section III of this Plea Agreement shall be admissible against the defendant at sentencing for any purpose.  If the defendant does not plead guilty or withdraws his guilty plea, the facts set forth in Section III of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or for rebutting any evidence, argument, or representation offered by or on the defendant's behalf.  The defendant expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section III of this Plea Agreement.

## V.    APPLICATION OF SENTENCING GUIDELINES PROVISIONS

26.    COUNT ONE: <u>Conspiracy to Engage in a Racketeer Influenced Corrupt Organization</u>

a.  Base Offense Level                                  34

[Drug Trafficking U.S.S.G. § 2D1.1(c)(1)(2)]

Total Offense Level                                  34

The parties agree that, other than credit for acceptance of responsibility, no other Guidelines adjustments apply to the determination of the total offense level.

27.    **Reduction of Offense Level for Acceptance of Responsibility.**

Under U.S.S.G. § 3E1.1(a), the United States will recommend that the defendant receive a two-level downward adjustment for acceptance of responsibility unless he: (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the

8

amount of restitution owed when he enters his guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; (i) violates his conditions of pretrial release; or (j) commits any act which could result in the United States seeking an obstruction of justice enhancement within the meaning of U.S.S.G. § 3C1.1.

Under U.S.S.G. § 3E1.1(b), if the Court determines that the Defendant's total offense level, before operation of § 3E1.1(a), is 16 or higher, and if the United States recommends a two-level downward adjustment pursuant to the preceding paragraph, the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing  because the defendant communicated his decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources.

28.  **Criminal History Category**. The defendant acknowledges that the Court may base his sentence in part on the defendant's criminal record or criminal history.  The Court will determine the defendant's Criminal History Category under the Sentencing Guidelines, and the Criminal History Category could result in an increase in the advisory guideline range.  The parties believe that, at the time of

9

sentencing, the defendant will fall into Criminal History Category I.  U.S.S.G. § 4A1.1.  This does not constitute a stipulation, but a belief based on an assessment of the information currently known.  The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.  The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement.  U.S.S.G. § 4A1.1.

29.    **Guideline Range**.  .  If the adjusted offense level is **31** (34 − 3) and the criminal history category is **I**, the Sentencing Guidelines range is **108** to **135** months' imprisonment.

30.    **Relevant Conduct**. The Court may consider any counts dismissed under this Plea Agreement and all other relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart or vary from that range.

31.    **Additional Sentencing Information**. The stipulated Sentencing Guidelines calculations are based on information now known to the parties.  The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances.  Good faith efforts

to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw his guilty plea.

The defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. The defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and makes other sentencing determinations, and the Court's reliance on such information shall not be grounds for the defendant to withdraw his guilty plea.

## VI.    APPLICATION OF SENTENCING STATUTES

32.    **Maximum Penalty**.

<u>Count One.</u> The maximum penalty for Conspiracy to Engage in a Racketeer Influenced Corrupt Organization, in violation of 18 U.S.C. §§ 1962(d) and 1963, is life in prison, a fine not to exceed $250,000 or twice any pecuniary gain to the defendant or loss to the victim(s), or both.

33.    **Factors Under 18 U.S.C. § 3553**. The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the defendant's sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence.

34.    **Parole Abolished**. The defendant acknowledges that his prison sentence cannot be shortened by early release on parole because parole has been abolished.

35. **Supervised Release**. In addition to imprisonment and a fine, the defendant will be subject to a term of supervised release of not more than 5 years as to Count One. The defendant understands that if he were to violate any condition of supervised release while on supervised release, the Court could revoke his supervised release, and he could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* USSG §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

36. **Special Assessment**. The defendant agrees to pay a one-hundred dollar ($100.00) special assessment per count of conviction at the time of sentencing.

37. **Additional Costs**. The defendant is required to pay for the costs of imprisonment, probation, and supervised release, including the costs for electronic monitoring of home detention, unless the defendant establishes that the defendant does not have the ability to pay such costs, in which case the Court may impose an alternative sanction such as community service.

## VII.    POSITIONS REGARDING SENTENCE

38. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that

12

the applicable guideline calculations or the defendant's criminal history category is different from that stated herein, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

39.    The defendant is free to seek any variance pursuant to 18 U.S.C. § 3553 or U.S.S.G. § 4A1.3, and the parties are free to oppose any departures, adjustments, or variances. The defendant acknowledges that the Court does not have to follow the recommendation of either party, and if the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

## VIII.    THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS

40.    **Plea Agreement and Decision to Plead Guilty**. The defendant acknowledges that:

      a.   He has read this Plea Agreement and understands its terms and conditions;

      b.   He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

      c.   He has discussed the terms of this Plea Agreement with his attorney;

      d.   The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section III; and

e. He was not under the influence of any alcohol, drug, or medicine
that would impair his ability to understand the Agreement when
he considered signing this Plea Agreement and when he signed it.

The defendant understands that he alone decides whether to plead guilty or
go to trial, and he acknowledges that he has decided to enter his guilty plea knowing
of the charges brought against him, his possible defenses, and the benefits and
possible detriments of proceeding to trial. The defendant also acknowledges that he
decided to plead guilty voluntarily and that no one coerced or threatened him to enter
into this Plea Agreement.

41.    **Waiver of Appeal and Collateral Attack**. The defendant knowingly
and expressly waives: (a) the right to appeal any sentence imposed within or below
the applicable Sentencing Guideline range as determined by the Court; (b) the right
to appeal the manner in which the Court determined that sentence on the grounds
set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other non-jurisdictional
aspect of the conviction or sentence, including the supervised release term and its
conditions, and any order of restitution or forfeiture.

The defendant also knowingly and expressly waives all collateral challenges,
including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the
procedure by which the Court adjudicated guilt and imposed sentence, except non-
waivable claims of ineffective assistance of counsel.

The defendant reserves only the right to appeal any portion of the sentence that is an upward departure or variance from the sentencing guideline range determined by the Court.

The defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case.

42.    **Forfeiture**. The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 1963,

a.    any interest acquired or maintained in violation of section 1962;

b.    any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendant[s] established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and,

c.    any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of 1962.

The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit additional directly forfeitable property.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge

15

(including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent the defendant has sought remission or otherwise challenged the forfeiture of the above-described property, he withdraws any such challenges.

43.    **FOIA Requests**.  The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

44.    **Restitution**.    The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. §3663A, applies and that the Court is required to order Defendant to make restitution to the victim(s) of his crimes.  The exact amount of restitution owed by the Defendant will be determined at a later date.

## IX.    ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions.  No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the defendant, the defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

LISA D. KIRKPATRICK
Acting United States Attorney

DATE: 5/20/2025

ALBANIA CONCEPCION
Assistant United States Attorney

THOMAS CALHOUN-LOPEZ
Assistant United States Attorney

BRIAN W. LYNCH
Trial Attorney, Violent Crime and Racketeering Section

DATE: 5/20/25

CARLOS SERRANO
Defendant

DATE: 5/20/25

MICHAEL BERNAYS
Counsel for Defendant SERRANO

17